Deane *v.* Hutchinson.

ROYAL E. DEANE et al.

v.

ALISON E. HUTCHINSON, CHARLES H. C. BEAKES et al.

1. A building erected by a tenant on the demised premises pursuant to a covenant in his lease, and which his lease gives him no right to remove, is not severable or removable as a trade fixture.

2. A chattel real cannot be encumbered by a chattel mortgage so as to make the record of the mortgage effectual against the creditors of the mortgagor, if it is recorded only in the record of chattel mortgages.

3. A sale of partnership property under a judgment against a member of the partnership, for his individual debt, gives the purchaser only such interest in the partnership property as the judgment debtor may be entitled to after the partnership debts are paid and the equities of the partners are adjusted.

On final hearing on bill and answers and proofs taken in open court.

*Mr. James Steen,* for complainants.

*Mr. Acton C. Hartshorne,* for Alison E. Hutchinson and Sarah C. Hutchinson.

*Mr. Robert L. Lawrence,* for Charles H. C. Beakes.

VAN FLEET, V. C.

The present object of this suit is to have the legal character of certain surplus-moneys determined, and also to procure a decision as to which of several claimants is entitled to the moneys. The suit was originally brought for a partition of a leasehold interest, but during its pendency the term or estate sought to be partitioned was sold, at judicial sale, under a judgment entitled to rank as the first lien on the demised premises, and standing paramount to the right of any of the parties to this suit. The sale, of course, rendered the original object of the suit unattainable, but the sale having resulted in raising a considerable sum in excess of the amount required to satisfy the judgment under which it was made, the suit has been brought to final hearing for the purpose of having a determination made deciding which of the parties is entitled to the surplus-moneys.

The following facts need to be stated: On the 21st of February, 1882, James A. Bradley demised by lease under seal, to William W. McChesney and John B. Hutchinson a term of twenty years, commencing on the 1st day of March, 1882, in a lot fifty feet by one hundred and twenty, at Asbury Park, the lessees covenanting to pay an annual rent of $50, and also to pay all taxes and assessments levied upon the demised premises. The lessees also covenanted that, unless they erected on the demised premises, within four months from the date of the lease, a building thirty feet by sixty, three stories high, the lease should be void. They further covenanted that, on the expiration of their term, they would quit and surrender the demised premises,

Deane v. Hutchinson.

·and that they should then be in as good state and condition as reasonable use and wear would permit. The lease was recorded, immediately after its execution, in the record of deeds. The lessees, within the time limited, erected the building they were required to erect. It was erected on brick foundations, sunk into earth, and cost about $3,200. Two thousand dollars of the money expended in its erection was borrowed of Alison E. Hutchinson, and, at the time the loan was made, the lessees promised to secure it by a first mortgage on the property. They afterwards, on the 16th of June, 1882, executed a chattel mortgage to Mr. Hutchinson. The only property mentioned in the schedule annexed to the mortgage is the building, and it is there described as "the building known as McChesney and Hutchinson's ice cream manufactory." The mortgage was recorded as a chattel mortgage in the book designated by law for the registration of such instruments. The lessees afterwards, on the 23d of December, 1882, executed a chattel mortgage to Lewis P. Thompson for $1,307.75, to secure the price of certain machinery which they had purchased of him and placed in the building for use in their business. The property described in the schedule annexed to this mortgage consists of machinery, the building and the leasehold interest. Sarah C. Hutchinson, the wife of Alison E. Hutchinson, is now the holder of this mortgage, it having been assigned to her on the 15th of April, 1884. The lessees having failed to pay for all the material used in the erection of the building, a mechanics lien was filed against the building alone, and not against the lot or curtilage whereon it stood. Suit was afterwards brought to enforce this lien, and on the 8th of August, 1883, a general and special judgment was entered therein. An execution to enforce this judgment was issued, which commanded that, in case the plaintiff's debt could not be made by the sale of the property, then the whole or the residue of the debt, as the exigencies of the case might require, should be made of the following-described lands, tenements and real estate of the said William W. McChesney and John B. Hutchinson, builders and owners, viz. : "The said building is a three-story-and-attic frame building, sixty feet six inches deep by

thirty-two feet six inches wide, erected on a lot or curtilage of land situate in the borough of Asbury Park," and then describing the lot by course and distance. The building was sold under the writ on the 8th day of April, 1884, and a conveyance made to the purchaser on the 28th day of the same month. The deed, in describing the subject of the grant, follows with precision the language of the execution. Over $1,250 was raised by the sale in excess of the sum required to satisfy the plaintiff's debt. This surplus is the subject of the present contest. Just before the lessees took the lease, they formed a copartnership to carry on the business of manufacturing and selling ice cream, which business they continued to carry on from sometime in May, 1882 until the month of September, 1883, when they dissolved. On the 2d of January, 1884, Charles H. C. Beakes recovered a judgment against the lessees in the supreme court of this state, for a debt which they incurred while they were carrying on business as partners, and a levy was made on the building on the 5th of April, 1884, by virtue of an execution issued on this judgment. Both Mr. Hutchinson and Mr. Beakes assert a claim to the surplus moneys to the exclusion of the other.

The question to be decided between these parties is whether Mr. Hutchinson, by virtue of his chattel mortgage, had a lien on the property from which the moneys in question were raised. His counsel contends that he had, and, in support of his contention, insists that the building is a trade fixture, and, as such, may be severed and removed at any time. The building, according to his view, is, in contemplation of law, a mere personal chattel. His argument, it will be observed, rests entirely on the ground that the title to the building, and the title to the land into which the building is built, are distinct, being vested in different persons, and that the owner of the building has a right, as against the owner of the land, to sever and remove the building at his will. The whole strength of this argument, it will be perceived, depends upon whether or not the building is removable by the lessees; if it is not, the argument is without foundation. Now, while it is a rule of law of great antiquity, that whatever is affixed to the soil becomes, in contemplation of law,

Deane v. Hutchinson.

a part of it, and is, consequently, subject to the same rights of property as the soil itself (*2 Smith's L. C. (8th Am. ed.) 206; Wood's L. & T. § 525*), yet it is also well established that erections made by a tenant, on the premises he holds by demise, for purposes of trade as well as for some other purposes, are removable, and that he may exercise his right of removal, at his will, at any time before the end of his term. But an essential quality of all removable erections is that they shall have been made under such circumstances as to show that the tenant made them of his own will or choice, and for his own benefit, intending that they should remain his property, and not in fulfillment of a duty or obligation to his lessor. Here just the reverse appears. The building was erected by the lessees in fulfillment of a covenant of their lease; they were obliged to erect it to preserve the life of their lease; a breach of the covenant would have been just as fatal to the life of their grant as a failure to pay the rent reserved by the lease. The lessees were not at liberty to consult either their choice or interest in the matter, but were just as much bound to build the building as they were to pay the rent they had covenanted to pay. The lease, neither by express words nor by implication, reserves a right to the lessees to remove the building, and its silence in that regard would seem to render it almost as certain that the parties intended that no such right should exist, as it is that they intended that the lessees, after paying the rent reserved by the lease, should have no right to reclaim the money. If the covenant had been that the lessees, instead of erecting the building themselves, should furnish to the lessor the money necessary for that purpose, and the money had been furnished and the building erected, in that condition of affairs the intention of the parties to incorporate the building into the land, and to make it an inseparable part of the land, might have been slightly more conspicuous than it is in the covenant under consideration, yet the two covenants are so identical in all their essential parts, that, in my judgment, it would be impossible to give them different constructions on the point under consideration.

Besides, I think the covenant defining what the lessees should

surrender on the expiration of their term, and in what state and condition the demised premises should then be, furnishes very cogent evidence of the intention of the parties in respect to the building. This covenant requires the surrender of the demised premises, and the thing demised consisted simply of the naked land—the building did not, when the lease was executed, constitute part of the demised premises—but the lessees, by the execution of the lease, bound themselves to make the building a part of the demised premises within four months from that date. They were bound to build the building, or suffer the loss of the term. They performed their covenant by erecting a building on brick foundations sunk into the earth, thus incorporating the building into the soil, and making it, permanently, a part thereof. The building thereby became a part of the demised premises, just as much so, both in legal theory and in fact, as though it had been erected by the lessor, for although he did not errect the building himself, it was erected for him. The building was put on the lessor's land in discharge of a duty the lessees were bound to perform to him. The building constitutes part of the demised premises ; it is made, by the lease, an inseparable part of the land, and the lessees, in my judgment, have no right in it, except to possess and use it during their term, and they are bound, on the expiration of their term, to surrender it as part of the demised premises.

But had a different conclusion been reached on this branch of the case, and the building been declared to be a mere personal chattel, still I think it is manifest that no part of the moneys in question could have been applied to the satisfaction of the chattel mortgages. The writ under which the moneys were raised commanded the sale of nothing, in respect to the particular property from which these moneys were raised, but land. That is all the sheriff was authorized to sell, and all he could either sell or convey. It is authoritatively established that, under an execution simply commanding the sale of land, the officer executing the writ has no authority to make sale or to pass title to any class of property except that described in his writ, and that the money raised by sale, under such writ, no

Deane v. Hutchinson.

matter what the sheriff may have attempted to do under color of its authority, must be regarded and disposed of as the proceeds of the sale of land. *Arnett* v. *Finney, 2 Stew. Eq. 309.* It is clear, therefore, that the moneys in question do not represent personal chattels.

But the claim on behalf of Mr. Hutchinson is put on additional ground. It is said, conceding that the building is not a personal chattel, and that it is immovable, still there can be no doubt that the lessees had a right to the possession and use of the building during the term of their lease, and that this right embraced power to pledge their interest in the building, as security for a debt. I think there can be no doubt about the soundness of both parts of that proposition, but the more material question just now is, Can property of this nature be effectually pledged, as against the creditors of the mortgagor, by a chattel mortgage? One of the fundamental objects of the law is the classification of property. It divides all property into two kinds, real and personal, and, by positive rules, prescribes by what means the title to each may be acquired and transmitted. The rules governing the acquisition and transmission of title to personal property differ, in many essential particulars, from those which govern the acquisition and transmission of the title to real property. For example, statutes exist authorizing the registration of mortgages of both real and personal property, and making such record notice of the contents of the mortgage to all persons subsequently acquiring an interest in the mortgaged property, but these statutes provide that the record of each class of these securities shall be kept separate and distinct from the other, so that if a mortgage of chattels is recorded in the record of mortgages of land, the record can have no effect. The record of an instrument not authorized by law to be recorded is a mere voluntary act, and is, in judgment of law, no notice. *Spielmann* v. *Kliest, 9 Stew. Eq. 199.* And so the record of a mortgage of chattels, recorded in the record of mortgages of land, and not in the manner directed for the registration of mortgages of chattels, will not constitute notice to a subsequent judgment creditor. *Williamson*

v. *New Jersey Southern R. R. Co., 2 Stew. Eq. 311.* Several years prior to the execution of the lease in question, leasehold interests were, by statute, put on the footing of freehold estates in several important particulars. That statute declares that leases, granting terms of not less than two years, may be recorded as deeds of lands are, and that such record shall be notice to subsequent judgment creditors, purchasers, lessees and mortgagees; that such interests or estates may be mortgaged as freehold estates are, and that a mortgage on such an estate may be made a matter of public record, by registration, in the same manner that mortgages of freehold estates are, and that its record shall have the same force and effect that the record of mortgages of freehold estates have; and that such estates shall be liable to seizure and sale under judgments only in the manner in which the law directs the seizure and sale of freehold estates. *Rev. p. 157.* It is manifest, I think, that the estate of these lessees in the demised premises could not, as against their creditors, be either encumbered or transmitted by judicial sale, except in a manner which should substantially conform to the provisions of this statute, and that a chattel mortgage, which, by its express terms, embraces nothing but goods and chattels, is utterly inefficacious to create a lien on such property.

But had this statute not been passed, I think it is entirely clear that, even in that condition of the law, Mr. Hutchinson's claim to these moneys would not have been a whit stronger than it is now. For it is well settled that in order to make the record of a mortgage of a chattel real effectual against a person subsequently acquiring an interest in the mortgaged property, the mortgage must have been recorded in the manner and in the record in which mortgages of lands are directed to be recorded, and that our statute regulating the execution and registration of chattel mortgages was intended to prescribe rules applicable alone to mortgages of personal chattels. It is quite obvious, both from the provisions and policy of this statute, that it was not intended to apply to mortgages of chattels real. *Decker* v. *Clarke, 11 C. E. Gr. 163; Spielmann* v. *Kliest, 9 Stew. Eq. 199.*

Deane *v.* Hutchinson.

My conclusion is, that as between the chattel mortgages and the judgment, the judgment is entitled to the moneys in question.

The complainants also make a claim to a part of the moneys in question. They recovered a judgment against one of the lessees (William W. McChesney) on the 7th of May, 1883. Their judgment is founded on a debt contracted by McChesney as an individual, and prior to the formation of the partnership. The complainants, soon after the recovery of their judgment, caused a levy to be made upon McChesney's interest in the demised premises, and subsequently purchased the same at sheriff's sale. On the 8th of October, 1883, McChesney sold and conveyed all the assets of the partnership, including the lease, to his copartner, his copartner stipulating to pay all the debts of the firm. McChesney received no other consideration for his transfer. The complainants had levied upon McChesney's interest in the demised premises long prior to McChesney's transfer to his copartner, but they can stand no higher than McChesney did; whatever rights they have, they derived through McChesney. By their purchase they simply took his place. He was entitled to nothing until the partnership debts were paid, and the complainants are in no better plight. The firm was hopelessly insolvent when McChesney conveyed his interest to his copartner. The facts before the court leave no doubt on that subject. If any part of the moneys in question shall remain after Mr. Beakes's judgment is satisfied, and his costs of this suit are paid, the residue should be paid to John B. Hutchinson. The complainants are not entitled to any part of it.